UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

CHARLES MORRIS, )
)
        Petitioner, )
)
v. ) No. 1:17-cv-00396-JMS-DKL
)
SUPERINTENDENT, )
)
        Respondent. )

**Entry Denying Petition for Writ of Habeas Corpus and Directing Entry of Final Judgment**

The petition of Charles Morris for a writ of habeas corpus challenges a prison disciplinary proceeding identified as No. REF 16-07-0010. For the reasons explained in this Entry, Mr. Morris's habeas petition must be **denied**.

**A.    Overview**

Prisoners in Indiana custody may not be deprived of good-time credits, *Cochran v. Buss,* 381 F.3d 637, 639 (7th Cir. 2004) (per curiam), or of credit-earning class, *Montgomery v. Anderson,* 262 F.3d 641, 644-45 (7th Cir. 2001), without due process. The due process requirement is satisfied with the issuance of advance written notice of the charges, a limited opportunity to present evidence to an impartial decision-maker, a written statement articulating the reasons for the disciplinary action and the evidence justifying it, and "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *Wolff v. McDonnell,* 418 U.S. 539, 570-71 (1974); *Piggie v. Cotton*, 344 F.3d 674, 677 (7th Cir. 2003); *Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000).

### B. The Disciplinary Proceeding

On July 13, 2016, Officer Edmonds wrote a Conduct Report charging Mr. Morris with use or possession of a cellular phone or device. The Conduct Report states:

> On 7/13/2006 [sic] approx. 10:00 a.m. I Officer Edmonds and Officer C. Wright conducted a shakedown in Unit 8 C2S13. While opening resident Morris Charles #963250 drawer on his bunk, I Officer Edmonds observed a "black LG track cell phone." Officer Wright found a black charger in a glove on top of Morris's gray tote. I Officer Edmonds confiscated the items, then radioed Lt. J. White and notified him of the items found in Morris's bunk. I Officer Edmonds escorted Morris to the shift office.

Filing No. 9-1 at 1.

Mr. Morris was notified of the charge on July 13, 2016, when he received the Screening Report. He plead not guilty to the charge. He requested as physical evidence the cellular phone and the glove the charger was found in, and he requested to call two inmates, Michael Luckett and Sam Cole, as witnesses and wanted to ask Lt. White if he asked Officer Edmonds where he obtained the cellular phone. Michael Luckett provided a written statement in lieu of live testimony, and he wrote, "They did not ask me if it was mine, NO." Filing No. 9-3 at 1.

A hearing was held on July 20, 2016. Mr. Morris stated the following at the hearing: "They never found any of this on me or in my bed area. When he shook us down, he found it up under my bunk. I don't have a drawer on my bunk. I don't know why they assume it's mine. Why am I the only one written up for this and not my Bunkie." Filing No. 9-6 at 1. Based on the Conduct Report, Mr. Morris's statement, and phone (both the picture and the physical phone, which was viewed by the hearing officer prior to the hearing), the hearing officer found Mr. Morris guilty. The hearing officer explained that the Conduct Report makes it clear that the phone was found in Mr. Morris's property. *Id.* The following sanctions were imposed: a ninety-day earned-credit-time deprivation and a credit-class demotion.

Mr. Morris appealed to Facility Head and the IDOC Final Reviewing Authority, but both of his appeals were denied. He then brought this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**C.     Analysis**

Mr. Morris raised three grounds for relief in his habeas petition. The respondent filed a return to the Court's show cause order, arguing that none of grounds merit relief. Mr. Morris did not file a reply brief, and the deadline to do so has long passed. The Court will address each of Mr. Morris's three claims in turn.

*1.     Denial of Physical Evidence*

Mr. Morris argues that he was improperly denied access to the physical evidence he requested—namely, the cellular phone and the glove in which the cellular phone charger was found. The respondent maintains that there is no right to the actual cellular phone given that Mr. Morris was provided with a photograph of it. Alternatively, the respondent argues that Mr. Morris was not prejudiced by the denial of the physical cellular phone. The respondent does not address Mr. Morris's request for the glove.

"[P]rocedural due process require[s] prison officials to disclose all material exculpatory evidence," unless that evidence "would unduly threaten institutional concerns." *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (citation and quotation marks omitted). In the prison disciplinary context, "the purpose of the [this] rule is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Id.* (citation and quotation marks omitted). Evidence is exculpatory if it undermines or contradicts the finding of guilty, *see id.*, and it is material if disclosing it creates a "reasonable probability" of a different result, *Toliver v. McCaughtry*, 539 F.3d 766, 780-81 (7th Cir. 2008).

The denial of evidence will be considered harmless, unless the evidence could have aided in the petitioner's defense. *See Jones*, 637 F.3d at 847 (holding that absent prejudice, due process violation in the prison disciplinary context are harmless); *see also Piggie*, 344 F.3d at 678 (applying harmless-error analysis to a due process violation).

The Court need not decide whether providing Mr. Morris with a picture of the cellular phone instead of the physical phone itself complied with due process because, even if it did not, any error caused by the failure to give Mr. Morris the cellular phone or glove was harmless. As an initial matter, Mr. Morris does not explain in his habeas petition how he was prejudiced by the denial of these pieces of evidence. Nor, after the respondent argued that any error was harmless, did Mr. Morris file a reply brief and explain how the denial of this evidence prejudiced him. This failure alone dooms his claim. *See Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Moreover, it is difficult to see how the denial of this evidence could have prejudiced Mr. Morris. As to the glove, the hearing officer found Mr. Morris guilty based on the cellular phone, which, unlike the cellular phone charger, was not found in the glove but amongst Mr. Morris's property. Given this, the glove would not have aided in Mr. Morris's defense.

Nor is it apparent how having the physical cellular phone, rather than a picture of it, would have aided in Mr. Morris's defense. This is because it is undisputed that a cellular phone was found in Mr. Morris's cell; Mr. Morris acknowledged at the disciplinary proceedings that it was found "up under my bunk." Filing No. 9-6 at 1. The picture would have allowed Mr. Morris to testify that the particular phone was not his or, perhaps, that he had seen his cellmate use it.

Without a further explanation as to how the physical cellular phone would have aided Mr. Morris in his defense, the Court cannot conclude that Mr. Morris was prejudiced by any due process error.

Finally, the Court notes that the purpose of applying *Brady* to prisoner disciplinary proceedings "is to insure that the disciplinary board considers all of the evidence relevant to guilt or innocence and to enable the prisoner to present his or her best defense." *Jones*, 637 F.3d at 847 (citation and quotation marks omitted). The Court has discussed the latter concern and, as to the former, the hearing officer stated that he examined the physical phone prior to the hearing. *See* Filing No. 9-6 at 1. Thus the purposes of this rule were met in Mr. Morris's case.

For each of these reasons, Mr. Morris is not entitled to habeas on this claim.

### 2. Failure to Consider Witness Statement

Mr. Morris maintains that he was denied his right to present a defense because the hearing officer failed to consider the witness statement from inmate Michael Luckett. The respondent does not contest Mr. Morris's assertion that the hearing officer did not consider Mr. Luckett's witness statement. Instead, the respondent argues that the witness statement was not exculpatory and, relatedly, the failure to consider it was harmless because the witness statement does not undermine the hearing officer's conclusion.

"Although inmates are not entitled to the full panoply of rights due a defendant in a criminal proceeding, they must be allowed to present relevant evidence, including witness testimony, unless it is cumulative or unduly threatens the security of the facility. Moreover, a hearing officer cannot refuse to consider an inmate's evidence simply because other evidence supports a finding of guilt." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016) (citation and quotation marks omitted). Here, the respondent does not dispute that the hearing officer did not consider Mr. Luckett's statement, and thus Mr. Morris's due process rights were violated.

The question is therefore whether this error was harmless—that is, whether Mr. Luckett's testimony would have "aided in [the petitioner's] defense." *Piggie*, 344 F.3d at 648. Again, Mr. Morris has not explained how Mr. Luckett's statement would have aided in his defense that the cellular phone was not his other than by asserting in a conclusory manner that the hearing officer "would have seen the phone was not" his had the statement been considered. Filing No. 2 at 2. Nor did Mr. Morris file a reply brief after the respondent argued that the error was harmless in which he could have attempted to explain how the statement would have aided him. This failure alone precludes relief on this claim. *See Piggie*, 344 F.3d at 678 (noting the petitioner did not "explain how [the requested witness's] testimony would have helped him" and thus "the district court properly denied relief" on the petitioner's claim that he was wrongfully denied a witness).

Moreover, it is not clear how Mr. Luckett's statement could have aided in Mr. Morris's defense. Mr. Luckett's statement in its entirety was that, "They did not ask me if it was mine NO." Filing No. 9-4 at 1. Presumably, Mr. Luckett was stating that correctional officers did not ask him whether the cellular phone was his rather than Mr. Morris's. But this statement alone does not aid Mr. Morris's defense. Mr. Luckett did not state that the phone was his or even that it was not Mr. Morris's; he merely states no one asked him about it. The fact that correctional officers did not question Mr. Luckett does not make it any more likely that the phone was not Mr. Morris's, and thus his statement would not have aided in Mr. Morris defense.

The foregoing due process violation was harmless for each of the reasons set forth above, and Mr. Morris is thus not entitled to relief on this claim.

3. *Sufficiency of the Evidence*

Mr. Morris's final claim is that there was insufficient evidence to find him guilty of possessing the cellular phone found in his cell. Specifically, Mr. Morris argues that after the

cellular phone was found in his cell the correctional officer "never questioned me or my bunky on who the device belonged to[]. If he ha[d] done so, the outcome would have been different." Filing No. 2 at 3.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. "[A] hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison v. Zatecky*, 820 F.3d 271, 274 (7th Cir. 2016); *see Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.") (citation and quotation marks omitted). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.

The mere fact that Mr. Morris believes the correctional officer who found the cellular phone should have questioned he and his cellmate about who owned the cellular phone does not make evidence that is otherwise sufficient lacking. In other words, the pertinent question is whether there is "some evidence" that Mr. Morris possessed the cellular phone, not whether a better investigation should have occurred.

It is undisputed that the cellular phone in question belonged either to Mr. Morris or his cellmate. The Seventh Circuit has suggested that evidence showing that an inmate had only a twenty percent change of being guilty, without more, does not constitute "some evidence" of guilt. *See Austin v. Pazera*, 779 F.3d 437, 439 (7th Cir. 2015) ("[I]t seems odd, to say the least, that someone should be punished when there is an 80 percent probability that he is innocent."); *but see Hamilton v. O'Leary*, 976 F.2d 341, 345 (7th Cir. 1992) (holding that evidence showing a twenty-five percent chance of guilt constitutes "some evidence" under the circumstances). Even if a fifty

percent chance of guilt is also insufficient—which the Court does not suggest is true—there is additional evidence that connects the cellular phone specifically to Mr. Morris rather than his cellmate. Specifically, the Conduct Report states that the correctional officers found the cellular phone in Mr. Morris's drawer on his bunk, *see* Filing No. 9-1 at 1, and the hearing officer credited the Conduct Report, Filing No. 9-6 at 1 ("Conduct Report is clear that the phone was found in [Mr. Morris's] property."). This fact certainly constitutes "'some evidence' logically supporting" the hearing officer's conclusion that Mr. Morris possessed the cellular phone and demonstrates "that the result [wa]s not arbitrary." *Ellison*, 820 F.3d at 274; *see House v. Daniels*, 637 Fed. Appx. 950, 951 (7th Cir. 2016) (holding that "some evidence" existed because the evidence did not rest on "shared access alone" but also additional evidence increasing the likelihood that the specific petitioner was actually guilty).

### D. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Morris to the relief he seeks. Accordingly, Mr. Morris's petition for a writ of habeas corpus must be **denied** and the action dismissed.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 8/4/2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

CHARLES MORRIS
963250
PLAINFIELD - CF
PLAINFIELD CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Abigail T. Rom
OFFICE OF THE ATTORNEY GENERAL
abby.rom@atg.in.gov